IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 16, 2005

## SCOTT BRADLEY PRICE v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Knox County**
**No. 76038     Mary Beth Leibowitz, Judge**

---

**No. E2004-02718-CCA-R3-PC - Filed December 16, 2005**

---

Petitioner, Scott Bradley Price, appeals the denial of his petition for post-conviction relief by the Knox County Criminal Court. Petitioner was convicted for rape of a child and sentenced as a Range I offender, to twenty-one years at one hundred percent, to be served in the Tennessee Department of Correction. On direct appeal, Petitioner challenged only the length of his sentence. This Court affirmed that judgment on November 19, 2001. *State v. Scott Bradley Price,* No. E2000-00441-CCA-R3-CD, 2001 WL 1464555 (Tenn. Crim. App. Nov. 19, 2001). Petitioner filed a *pro se* petition for post-conviction relief. The petition was subsequently amended by appointed counsel. In his appeal, Petitioner argues that he was denied effective assistance of counsel because (1) trial counsel did not investigate Petitioner's claims that his audio recorded confession was materially altered; (2) trial counsel did not advise Petitioner to testify in order to rebut the State's evidence; and (3) trial counsel did not use available medical records to challenge the accuser's testimony at trial. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ROBERT W. WEDEMEYER, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Scott Bradley Price.

Paul G. Summers, Attorney General and Reporter; Blind Akrawi, Assistant Attorney General; Randall E. Nichols, District Attorney General; Kevin Allen, Assistant District Attorney General, for the appellee, the State of Tennessee.

### OPINION

## I. Background

The facts of this case, as developed at the post-conviction hearing and taken in a light most favorable to the State, are as follows:

Petitioner was convicted of raping a twelve-year-old child. The victim was a neighbor who had come to Petitioner's house to borrow some sugar. Upon entering the home, Petitioner pulled the victim into the bathroom and proceeded to remove her shorts and underpants. Petitioner laid on top of the victim, began touching her, and forced her to have sexual intercourse with him. The victim was shocked and scared and consequently did not scream or fight Petitioner during the incident. The incident lasted approximately five to ten minutes. After it was over, Petitioner instructed the victim not to tell anyone. The victim, upset and crying, left Petitioner's house and ran to her own home.

Upon reaching her house, the victim told her aunt what had happened. A friend of her aunt's called the police and a police officer and an ambulance came to the victim's residence. The victim was taken to the hospital and given a medical examination but refused to allow the doctor to complete it. The medical record, which was not introduced at trial, shows that the victim had no lesions, no abrasions, and no lacerations. It also shows that the victim had a "redundant hymen," indicating the hymen remained intact after the incident. A rape kit was also administered and given to the crime lab, but was not processed because Petitioner subsequently confessed to having sex with the victim.

Petitioner's confession was audio recorded by the investigating officer and introduced at trial. A transcript of the tape reveals that Petitioner admitted to having sex with the victim, but he asserted that the victim was the initial "aggressor." Petitioner stated that he began having intercourse with the victim but realized what he had done and immediately stopped. Petitioner did not testify at trial and did not present any evidence.

## II. Post-Conviction Hearing

At the post conviction hearing, Petitioner testified that his appointed trial counsel, Laura Hendricks, now Laura Rule, represented him for ten to eleven months. Petitioner testified that in that time period, he met with counsel only one time. During that meeting, Ms. Rule played for Petitioner his audiotaped confession in which he admitted to Officer Pressley that he had sexual intercourse with a twelve-year-old child. Petitioner testified that he complained that the taped confession was materially altered and requested that trial counsel have the tape tested for alterations. Specifically, he claimed that the questions and answers in the recorded confession had been rearranged, making it sound as though he admitted to having actual intercourse with the child when in reality he only made initial advances but did not complete the act. Petitioner told his trial counsel that he never told Officer Pressley that he penetrated the victim in any way. He told his trial counsel that when he answered Officer Pressley's questions, the officer would wrap a sentence around his answer to make it different. Petitioner testified that Ms. Rule told him that testing the tape was not possible. He further claimed that after his conviction, Ms. Rule informed Petitioner that the tape could have been tested if he had paid her. The actual tape was not available at the post-conviction hearing, and it is thus not available on appeal.

Petitioner complained that he never discussed trial strategy with Ms. Rule, other than being told that his only option was to serve fifteen years in prison at (85%) eighty-five percent. The only physical evidence Petitioner saw was the victim's medical record. Petitioner testified that he found the record significant because it revealed that the accuser had a redundant hymen. During the trial, he informed his attorney that he wanted to testify regarding the taped confession and his version of the events that occurred on the day of the incident. Petitioner admitted at the post-conviction hearing that he was aware that his prior convictions could be used to impeach his credibility during cross-examination, but he believed that he had done nothing wrong in this case and insisted that he be allowed to testify. Petitioner testified that his trial counsel advised him that if he testified it might do more to hurt his case than to help and that his testimony was not part of her strategy. Petitioner did not testify, and he did not inform the trial court that he wanted to testify.

Laura Rule testified that she had been a full-time practicing attorney since October of 1990. For at least the first eight years of her practice, seventy-five percent of her caseload consisted of criminal defense work. At the time of the post-conviction hearing, she was the Blount County Staff Attorney for Legal Aid of East Tennessee. At the time of Petitioner's trial, Ms. Rule was primarily practicing criminal law in Knox County and throughout East Tennessee. She regularly accepted appointments to represent indigent clients. She was appointed to represent Petitioner in the summer of 1998.

Ms. Rule testified that she met with Petitioner on approximately four occasions. She talked with Petitioner by telephone several times, and talked to his wife on a daily basis. She stated that she met with Petitioner shortly after being appointed to represent him. She met with him again prior to the suppression hearing, immediately after the suppression hearing, and prior to going to trial. Despite having heard the tape previously, it was only after the suppression hearing that Petitioner first told Ms. Rule that he believed that the audiotaped confession had been altered. Prior to the suppression hearing, Petitioner told Ms. Rule that he was intoxicated the night that he gave his statement, and that he had no recollection at all of anything on the tape, nor would he have voluntarily given the statement. Consequently, Ms. Rule scheduled another meeting with Petitioner to listen to the tape again and discuss Petitioner's new found knowledge of what he said during the taped confession.

Petitioner admitted that he had confessed to sexual intercourse with the victim. He asserted however, that certain other statements on the tape had been taken out of context or removed. Petitioner explained that there were missing portions of the tape in which he stated that the victim had seduced him and that he was unaware that she was only twelve years old. Petitioner wanted to have an expert test the tape to determine if it had been materially altered. Petitioner never claimed that his words had been changed inside the tape. He claimed only that certain statements explaining his conduct had been removed.

Ms. Rule explained to Petitioner that because he admitted that he had sex with a twelve-year-old child, it did not matter that the other statements may have been removed because those omitted statements were not exculpatory given the nature of the crime. She further explained that if the tape

were tested and none of the omitted statements altered the incriminating statement, it would be worse for Petitioner because then there could be an expert on the stand testifying that Petitioner raped the child. Ms. Rule testified that Petitioner never denied having sex with the victim. Petitioner's position was always that he had sex with the victim, but she initiated the sex, and that once he realized what he had done, he immediately stopped. Ms. Rule denied telling Petitioner that if he had paid her, the tape could have been tested.

Ms. Rule was notified of the victim's medical exam and she shared the results with Petitioner. She advised Petitioner that she did not think the report should be introduced at trial because it contained statements which incriminated him in the rape of the victim. Ms. Rule acknowledged that the statements in the report were consistent with the victim's trial testimony, but she did not want to reinforce that information to the jury in writing. She advised Petitioner that the victim's redundant hymen was insignificant because it did not prove that she had not had sex. This was of particular importance because Petitioner had consistently maintained that the victim was sexually active on a regular basis.

The State made offers to settle with Petitioner on more than one occasion. Ms. Rule did not remember the exact nature of the offers, but did recall the final offer made on the day of trial. That offer was an agreement wherein Petitioner would plead to one count of child rape and serve fifteen years, and the second count of child rape would be dismissed. She and Petitioner discussed what the proof would show at trial and Petitioner gave a qualified acceptance. He wanted to remain out of jail until his wife gave birth to their child. The State would not agree to the arrangement.

On the day of trial, Petitioner informed Ms. Rule that he wanted to hire a new attorney. The new attorney was not present but Ms. Rule notified the trial court of Petitioner's wishes and they proceeded to trial. According to Ms. Rule, it was absolutely Petitioner's decision whether to take the stand at trial. She advised Petitioner that he had an absolute right to testify. She advised him that if he testified the jury would be made aware of his prior convictions. Ms. Rule told Petitioner that the outcome of the trial would largely depend on whether the jury believed him. She also told Petitioner that she thought his testimony would do more damage than good. Ms. Rule advised Petitioner that she was prepared to do a direct examination if he chose to testify. Petitioner elected not to testify. Ms. Rule obtained a private investigator to interview all the people Petitioner wanted interviewed both for trial and for the sentencing hearing. None of the evidence recovered from these witnesses amounted to a defense, and none of these witnesses testified at trial.

Mr. Russell Greene was appointed to represent Petitioner at his sentencing hearing, in his motion for new trial, and in his motion for acquittal. He also started Petitioner's direct appeal before it was taken over by Mr. Gerald Gulley. Mr. Greene testified that he had been a licensed, practicing attorney since 1997, and during that time his practice had been ninety-nine percent criminal defense. Mr. Greene was appointed to represent Petitioner after the court granted Ms. Rule's motion to withdraw as counsel.

-4-

Mr. Greene and Petitioner discussed three issues to be raised in Petitioner's motion for new trial. The first was an allegation by Petitioner that the foreman of the jury polluted his trial because of a prior relationship between Petitioner and the foreman. Mr. Greene was not able to uncover evidence to support this allegation. The second issue was in regard to a rape kit which was administered to the victim but never processed. The district attorney at the time cited Petitioner's confession as the reason the rape kit was never processed. The third issue dealt with Petitioner's allegations that his audiotaped confession had been materially altered. It was Petitioner's contention that the tape had been spliced and his answers to certain questions had been altered.

Petitioner told Mr. Greene that the tape had been altered in that his answers were changed and taken out of context. Petitioner also told Mr. Greene that he had been drinking and smoking before giving his confession and that his memory was fuzzy regarding his answers to the detective's questions. Mr. Greene gave Petitioner a copy of the transcript of the audiotaped confession and had him mark the transcript in the areas Petitioner thought were suspect. Petitioner's marks were significant and Mr. Greene tried but was unable to find someone local to examine the tape for alterations. He finally found someone in Iowa who could examine the tape for approximately sixteen hundred dollars. Mr. Green petitioned the court of criminal appeals for money to test the tape but the court denied such an allowance. He then asked Petitioner's father for the money and his father also refused. It was never possible to test the tape because Petitioner could not come up with the money. For this reason, the issue of the altered tape was not raised in the motion for new trial.

Mr. Gerald Gulley testified that he had been a practicing attorney since 1989, doing a mixture of civil and criminal work. From the late 1990's through 2001, he contracted with the Tennessee Public Defender's Conference to write appellate briefs for indigent criminal defendants. Mr. Gulley was appointed to handle Petitioner's appeal. Mr. Gulley spoke with Mr. Greene about the issues raised in the motion for new trial. He went to the Northeastern Correctional Complex to meet with Petitioner in 2001. During the post-conviction hearing, Mr. Gulley testified that he explained to Petitioner that the issues Petitioner could raise on direct appeal were limited to those issues raised in the motion for new trial, thus the altered tape could not be argued on appeal. He explained to Petitioner that the best place to pursue that issue was in a post-conviction hearing. A sentencing challenge was the only non-frivolous issue Mr. Gulley felt Petitioner could legitimately raise on direct appeal.

### III. Standard of Review

Petitioner asserts that trial counsel was ineffective in that she did not investigate his claims that the audio recorded confession was materially altered; that she did not advise Petitioner to testify in order to rebut the State's evidence; and that she failed to use the medical record which revealed the accuser's hymen remained "redundant" or intact after the incident.

To sustain a petition for post-conviction relief, a petitioner must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. *See* T.C.A. § 40-30-110(f) (1995); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). The post-conviction court's findings of

fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). We afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997) This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). All questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *See Momon*, 18 S.W.3d at 156; *Henley*, 960 S.W.2d at 578-79.

For a petitioner to successfully overturn a conviction based on ineffective assistance of counsel, the petitioner must establish that counsel's performance was deficient, and that the deficiencies in performance were prejudicial and "actually had an adverse effect on the defense." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To be deficient, the services rendered must be below the range of competence demanded of attorneys in criminal cases. *See Baxter v. Rose*, 523 S.W.2d 930, 936-37 (Tenn. 1975). Defense counsel "must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interests, undeflected by conflicting considerations." *Beasley v. United States*, 491 F.2d 687, 696 (6th Cir. 1974).

In reviewing whether counsel's performance was deficient, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. In order to establish prejudice, the petitioner must show that a reasonable probability exists that "but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

It is unnecessary for a court to address deficiency and prejudice in any particular order, or even to address both if the petitioner makes an insufficient showing on either. *Strickland*, 466 U.S. at 697. We review the post-conviction court's factual findings underlying a claim of ineffective assistance of counsel under a *de novo* standard with a presumption that those findings are correct, unless the preponderance of the evidence establishes otherwise. *Burns*, 6 S.W.3d at 461. However, the post-conviction court's conclusions of law, such as whether counsel's performance was deficient or whether that deficiency was prejudicial, are reviewed under a *de novo* standard with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001) (citations omitted).

## IV. Analysis

Petitioner first claims that trial counsel was ineffective because she failed to investigate Petitioner's claims that his audio confession was materially altered. Ms. Rule testified that in her opinion it was not the best strategy to have the tape tested. She explained that although Petitioner

claimed some of the statements in the tape had been altered, he could not deny his statement admitting he had sex with the victim. Ms. Rule further explained that given the nature of the crime, the allegedly altered statements would not be mitigating in light of the admission. Those statements included Petitioner's assertions that he was unaware of the victim's age, and that the victim actually seduced him. It was Ms. Rule's testimony that she felt that if the tape was tested and Petitioner's admission was unaltered, it would be detrimental to his case to have an expert on the stand testifying, in effect, that Petitioner raped the child.

After a review of the trial transcript, the post-conviction court found that only Petitioner raised claims regarding the authenticity of the tape. The court noted that on different occasions Petitioner told two different attorneys that he was so intoxicated that he could not remember his confession to the investigating officer. The post-conviction court found that Ms. Rule's decision not to test the tape did not fall below the obligations of counsel as set forth in *Strickland v. Washington*. The fact that Ms. Rule's trial strategy was not favorable to Petitioner is not indicative of deficient performance. It was a strategic and tactical choice not to test the tape, and we will not attempt to second-guess counsel's course of action. *See State v. Martin*, 627 S.W.2d 139, 142 (Tenn. Crim. App. 1981) ("This, too, is a matter of strategy, and tactics upon which we will not attempt to 'second guess' counsel."); *see also Strickland*, 466 U.S. at 690. Based on our review, we conclude that the evidence does not preponderate against the post-conviction court's finding that trial counsel rendered effective assistance in this regard. Petitioner is not entitled to relief on this issue.

Petitioner next argues that trial counsel was ineffective in not advising Petitioner to testify in order to rebut the audio taped confession offered by the State. Petitioner contends that without his testimony or any physical evidence to rebut the taped confession, the State's evidence was left unchallenged and the jury had no choice but to convict him. Ms. Rule testified that she told Petitioner that it was his choice whether to testify at trial. She admitted that she told Petitioner it would do more harm than good because it would raise issues regarding Petitioner's credibility due to his prior criminal record. Ms. Rule told Petitioner that she was prepared to conduct a direct examination if he wanted to testify. Petitioner admitted that trial counsel did not instruct him not to testify, but that she implied that if he did testify he would be convicted. He stated that he understood that he could testify, but thought that it was trial counsel's ultimate decision because she was the attorney and knew about the law. Petitioner never informed the trial court of his desire to testify or of any limitation trial counsel placed on his right to testify.

The post-conviction court found insufficient proof to show that Petitioner was forcefully denied his right to testify. The court found the proof indicated that it was Petitioner's choice not to testify due to his prior criminal record. As stated above, "questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in evidence are matters entrusted to the trial judge as the trier of fact" and the post-conviction court's credibility determinations are conclusive on appeal unless the evidence preponderates against them. *State v. Odom*, 928 S.W.2d 18, 22-23 (Tenn. 1996). The post-conviction court accredited the testimony of trial counsel. The evidence in the record does not preponderate against the post-conviction court's credibility determination. The petitioner has not proven by clear and convincing evidence that Ms. Rule was

ineffective by denying him the right to testify on his own behalf. We parenthetically note that Petitioner's trial occurred in April of 1999, prior to the release of the decision in *Momon v. State*, which requires a jury-out hearing, on the record, indicating that Petitioner knowingly and voluntarily waives his fundamental constitutional right to testify. *Momon v. State,* 18 S.W.3d 152, 161-62.

Finally, Petitioner claims that trial counsel was ineffective in that she did not use the available medical record which revealed that the victim had a redundant hymen after the incident. Petitioner asserts that the redundant hymen would have served as corroborative evidence to his claim that he did not penetrate the victim. Ms. Rule asserted that she did not use the medical record because it contained statements incriminating Petitioner in the rape of the victim. She also explained that a redundant hymen is not conclusive as to whether a woman has had sex. Additionally, Petitioner had consistently maintained that the victim was sexually active and he never denied having sexual intercourse with the victim. Ms. Rule reasoned that it would be more detrimental to give the jury a sheet of paper which contained written statements from the victim that she was raped by Petitioner, than to withhold the fact of the redundant hymen. Ms. Rule testified that she did not want to give the jury something that would enforce Petitioner's guilt upon the jury.

The post-conviction court, by its finding of effective assistance of counsel, implicitly found that the decision to withhold the medical record from evidence was not indicative of deficient performance by trial counsel. Again, it was a reasoned, strategic decision, and one Ms. Rule undertook in an apparent effort to protect Petitioner's interests. She declined to use the medical record as evidence in an effort to prevent giving the jury written evidence confirming Petitioner's guilt. Such a tactical decision will not be second-guessed or undermined by this Court. *See State v. Martin*, 627 S.W.2d at 142. As such, we find that the evidence does not preponderate against the post-conviction court's findings that Ms. Rule was not ineffective in failing to introduce the medical record into evidence.

## CONCLUSION

We conclude the evidence presented by Petitioner does not preponderate against the post-conviction's finding that trial counsel's performance was not deficient and did not fail to comply with the obligations of counsel under *Strickland v. Washington*. Accordingly, the judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, JUDGE